UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARLA L.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

1:19-CV-01195 EAW

## INTRODUCTION

Represented by counsel, plaintiff Karla L. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 22, 2016. (Dkt. 6 at 14, 91).[1] In her application, Plaintiff alleged disability beginning January 2, 2016, due to rheumatoid arthritis and ulcerative colitis. (*Id.* at 14, 196). Plaintiff's application was initially denied on May 6, 2016. (*Id.* at 14, 92). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Ellen Parker Bush on May 18, 2018, with Plaintiff appearing in person in Buffalo, New York, and the ALJ presiding via video from Lawrence, Massachusetts. (*Id.* at 14, 29-69). On September 4, 2018, the ALJ issued an unfavorable decision. (*Id.* at 11-28). Plaintiff requested Appeals Council review; her request was denied on July 10, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-10). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2021. (Dkt. 6 at 16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 2, 2016, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of rheumatoid arthritis, fibromyalgia, and degenerative disc disease of the cervical and lumbar spine. (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe impairments of ulcerative colitis, depressive disorder, bilateral knee impairment, goiter, mild emphysema, hypertension, and gastroesophageal reflux disease. (*Id.* at 17-18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff can:

> lift and carry 20 pounds occasionally and 10 pounds frequently; she can sit, stand and walk 6 hours in an 8-hour day; she can occasionally climb, stoop, kneel, crouch, and crawl; she can frequently balance; she can frequently finger bilaterally; and she must avoid exposure to unprotected heights and respiratory irritants.

(*Id.* at 18). At step four, the ALJ found, relying on the testimony of a vocational expert ("VE"), that Plaintiff was capable of performing her past relevant work as a telephone representative and retail store manager. (*Id.* at 22). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 23).

## II. The Commissioner's Determination Is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ improperly evaluated the opinion evidence of record; and (2) the ALJ's RFC finding fails to properly account for Plaintiff's impairments. The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

Here, Plaintiff contends that the ALJ improperly discounted the opinion of her treating rheumatologist, Dr. Sunita Chadha. Dr. Chadha began treating Plaintiff in August 2011, and saw her approximately every three months. (Dkt. 6 at 1308). On April 25, 2018,

Dr. Chadha completed a "Physical Residual Functional Capacity Questionnaire" as to Plaintiff, in which she stated that Plaintiff suffered from rheumatoid arthritis and fibromyalgia and had a fair prognosis.  (*Id*.).  Dr. Chadha opined that: Plaintiff's impairments would constantly interfere with the attention and concentration needed to perform even simple work tasks; Plaintiff was incapable of even "low stress jobs"; Plaintiff could walk one city block without rest or severe pain; Plaintiff could sit for 15 minutes at one time before needing to get up; Plaintiff could stand for 15 minutes at one time before needing to sit down or walk around; Plaintiff could sit and stand/walk for less than two hours in an eight-hour workday; Plaintiff would need to walk around for approximately 30 minutes in an eight-hour workday, for five minutes at a time; Plaintiff would need to shift positions at will; Plaintiff would needed to take a 15-20 minute unscheduled break "[e]very couple hours maybe" during an eight-hour workday; Plaintiff should "maybe" elevate her legs with prolonged sitting, but Dr. Chadha "[did not] know if that will help"; Plaintiff could rarely look down and could occasionally turn her head right or left, look up, or hold her head in a static position; Plaintiff could occasionally twist, stoop, crouch/squat, climb ladders, and climb stairs; Plaintiff would have "good days" and "bad days"; and Plaintiff would need to be absent from work due to her impairments more than four days per month. (*Id.* at 1308-11).  Dr. Chadha also opined that Plaintiff would have "significant limitations with reaching, handling or fingering," but declined to provide a more specific breakdown

of Plaintiff's ability to perform such activities, stating that she had not "calculated a percentage." (*Id.* at 1311).

In assessing Plaintiff's RFC, the ALJ found that she could not "place any reliance upon [Dr. Chadha's] opinion, despite her status as a treating provider, because her suggested parameters do not comport with either her treatment records, nor with those of other medical providers[.]" (*Id.* at 21). The ALJ explained that the limitations identified by Dr. Chadha were wholly inconsistent with her most recent examination of Plaintiff, in January 2018, where Plaintiff exhibited only mild tenderness in her wrists and small hand joints, mild crepitus in the right knee, and mild soft tissue swelling in her ankles. (*Id.*; *see also id.* at 726). The ALJ noted that Dr. Chadha had reported similarly mild findings in October and June 2017. (*Id.* at 21; *see also id.* at 715, 721). The ALJ further found Dr. Chadha's failure to provide an opinion regarding Plaintiff's specific manipulative abilities inconsistent with her treatment records, which reflected that Plaintiff's "hand and finger issues" were the "most prevalent." (*Id.* at 21-22).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

The Court finds no violation of the treating physician rule here. The ALJ expressly noted that Dr. Chadha was a rheumatologist who had "been treating Plaintiff since before the alleged onset date" and "had the benefit of longitudinal relationship with [Plaintiff's]

physical conditions." (Dkt. 6 at 19). The ALJ further expressly noted that before opining on Plaintiff's RFC, Dr. Chadha had most recently examined Plaintiff in January 2018, and had previously examined her in June and October 2017. (*Id.* at 21-22). The ALJ further considered the evidence in support of Dr. Chadha's opinion, including her treatment records, and the consistency of Dr. Chadha's opinion with the record as a whole. (*Id.*).

The ALJ's conclusion that Dr. Chadha's own treatment records and the other evidence of record did not support the extreme limitations set forth in Dr. Chadha's opinion is supported by substantial evidence. For example, Dr. Chadha opined that Plaintiff would "constantly" be unable to maintain the attention and concentration required for even simple work. (*Id.* at 1308). However, as the ALJ noted, Dr. Chadha consistently noted that Plaintiff was alert and oriented with normal affect (*see id.* at 715, 721, 726), Plaintiff's primary care provider performed numerous mental status examinations of Plaintiff that were within normal limits with Plaintiff showing no signs of acute distress (*see id.* at 267, 275, 284, 288), and consultative psychiatric examiner Dr. Gina Zali observed that Plaintiff's attention and concentration were intact (*id.* at 451). While Plaintiff identifies other evidence of record that she argues supports Dr. Chadha's opinion (*see* Dkt. 10-1 at 13), where substantial evidence exists "to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d. 444, 454 (S.D.N.Y. 2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Here, the ALJ was within her discretion to

conclude that Dr. Chadha's opinion was inconsistent with the evidence of record, including her own treatment records, and to thus decline to afford it controlling weight.

Plaintiff next argues that the ALJ erred in placing "great reliance" on the opinion of medical consultant Dr. G. McCormack. (Dkt. 4 at 22; Dkt. 10-1 at 15-16). In particular, Plaintiff contends that because Dr. McCormack did not examine her, the ALJ could not rely on Dr. McCormack's opinion in assessing Plaintiff's RFC. (Dkt. 10-1 at 15). Plaintiff is incorrect. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (explaining that the regulations applicable to Plaintiff's claim "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that ALJ was permitted to consider treating physician's treatment notes and conclude based thereon that non-examining physician's opinion was more reliable than treating physician's opinion); *Brett M. v. Comm'r of Soc. Sec.*, No. 19-CV-01235-FPG, 2020 WL 7487860, at *4 (W.D.N.Y. Dec. 21, 2020) ("[T]he Commissioner is correct that non-examining source opinions . . . can constitute substantial evidence in support of the ALJ's decision."). Here, the ALJ explained that she found Dr. McCormack's opinion more consistent with the evidence of record, included Dr. Chadha's records, Plaintiff's primary care records, and the consultative examinations. (Dkt. 6 at 20, 21). The Court finds no error in the ALJ's reliance on Dr. McCormack's opinion in formulating Plaintiff's RFC.

The Court accordingly rejects Plaintiff's contention that the ALJ's RFC finding was not supported by substantial evidence, because it is consistent with Dr. McCormack's opinion. (*Compare id.* at 18 *with id.* at 1226-29). As noted above, Dr. McCormack's

opinion constitutes substantial evidence in support of the ALJ's determination. The Court is unpersuaded by Plaintiff's contention that Dr. McCormack's opinion failed to account for her pain and fatigue, and that he was required to provide for absences and/or time off task. (*See* Dkt. 10-1 at 16-17).

Plaintiff argues that she suffers from fibromyalgia "fog" and that Dr. McCormack's opinion fails to appropriately accommodate this impairment. (*Id.*). However, the ALJ expressly rejected the contention that Plaintiff suffered from such fibromyalgia "fog," noting the normal psychological evaluations discussed above. (Dkt. 6 at 20). The ALJ's determination that Plaintiff did not suffer from fibromyalgia "fog" was supported by substantial evidence, and she therefore did not err in adopting a medical opinion that did not include limitations based on such "fog."

For all these reasons, the Court finds no basis to reverse the Commissioner's determination that Plaintiff was not disabled as defined in the Act, nor to remand for further administrative proceedings.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 25, 2021
      Rochester, New York